DENNIS BOYLE and Another v. P. MUSSER and Others.

June 26, 1899.

Nos. 11,685—(195).

### Driving Intermingled Logs—G. S. 1894, § 2466.

In an action under G. S. 1894, § 2466, to recover compensation for driving the logs of defendants, which had become intermingled with the logs of plaintiffs, it appeared that plaintiffs did not drive the intermingled logs to a place where they could be conveniently separated, because, before arriving at such a place, they reached the limits in the river beyond which a boom company was exercising exclusive control in driving all logs floating down the river. The intermingled logs then passed into the control of the boom company, and were driven by it to its booms, where they were separated. *Held*, plaintiffs drove and caused the logs to be driven to a place where they could be separated, and are entitled to recover.

### Same—Log Mark—Record Owner—License.

Said section gives a right of action against the person in whose name the logs are recorded. The log mark was recorded in the name of "Musser, Sauntry & Co.," a partnership which had been dissolved, and the mark was placed on these logs with the consent of one of the former partners. *Held*, he is liable.

### Same—Evidence of Clean Drive.

*Held*, the evidence warranted the jury in finding that plaintiffs made practically a clean drive of the intermingled logs. When plaintiffs' logs and a portion of defendants' logs became intermingled, the other portion of defendants' logs were further up the stream above plaintiffs' logs, and not intermingled with them. The latter portion of defendants' logs were to be driven down the same season. *Held*, under these circumstances, it

was not necessary for plaintiffs to make as clean a drive of defendants' logs as they should have made if no more of the same logs were to come down the same river that season.

**Same.**

> *Held*, the evidence warranted the jury in finding that plaintiffs drove defendants' logs in good faith, and in the same manner and as far as plaintiffs should have driven their own under the circumstances.

Action in the district court for Washington county against P. Musser, William Sauntry, and others, as copartners as Musser, Sauntry & Co., to recover $6,750 and interest for driving logs mingled with logs of plaintiffs. William Sauntry and W. M. Cain, copartners as Sauntry & Cain, intervened. The case was tried before Williston, J., and a jury, which rendered a verdict in favor of plaintiffs and against Sauntry as defendant, and against intervenors, for $4,724.80; and from an order denying a motion for a new trial, defendant Sauntry and intervenors appealed. Affirmed.

*Clapp & Macartney*, for appellants.

*J. N. Searles* and *Sullivan & Manwaring*, for respondents.

CANTY, J.[1]

This is an action under G. S. 1894, § 2466, to recover compensation for driving logs intermingled with the logs of the plaintiffs. They recovered a verdict against William Sauntry and W. M. Cain, who appealed from an order denying a new trial.

1. The logs in question were driven down the Kettle river, and from the mouth of that river 25 miles further down the St. Croix river to Never's dam. From the head of this drive down to the booms of the St. Croix Boom Corporation, some considerable distance below Never's dam, there was no place at which the intermingled logs could be separated. This is conceded by all parties. The plaintiffs did not drive the logs down to these booms, or any further than Never's dam, and appellants contend that for this reason plaintiffs cannot recover. So far as here material, said section 2466 reads as follows:

"That any person who shall desire to float to market or place of

[1] MITCHELL, J., absent.

manufacture any logs or timber in any of the streams of this state, and who shall be hindered and obstructed in so doing by the logs or timber of another, or any person whose logs or timber, in any of the waters of this state, are so intermixed with the logs or timber of another that the same cannot be conveniently separated for the purpose of being floated to the market or place of manufacture, may drive all logs or timber with which his own is or may be obstructed or intermixed, towards such market or place of manufacture to some point where the same can be conveniently separated from his own."

Appellants contend that, as the statute provides for driving the intermingled logs "to some point where the same can be conveniently separated," and as plaintiffs did not do so, they cannot recover under the statute.

It appears by the evidence that in 1891 the St. Croix Lumbermen's Dam & Boom Company was organized under the laws of Wisconsin for the purpose of improving the navigation of the St. Croix river for a distance of about 40 miles above the boom limits of the St. Croix Boom Corporation. Immediately after the organization of the dam and boom company, it erected a large dam in the river, just below Yellow Pine Rapids, so as to raise the water in the river, back up over the rapids a distance of about 13 miles, and for the purposes of log navigation the company has ever since taken and held exclusive possession of the river from the head of this slack water down to the point below the dam where the St. Croix Boom Corporation takes charge of the floating logs. The first-named company handles a vast amount of logs every year, and charges a toll of 10 cents per 1,000 feet for taking charge of the logs, floating them down over its dam, and delivering them to the last-named company at some point below. Since Never's dam was built, it has been the uniform custom of those driving logs down the Kettle river and down the St. Croix river to deliver the logs to the dam and boom company at the head of the slack water above Never's dam, and pay that company the customary toll for driving the logs from that point down to where the logs were delivered by that company to the boom corporation.

Appellants offered to prove that they paid such toll on the logs here in question. On the oral argument appellants' counsel ques-

tioned the right of the dam and boom company to exclude loggers from driving their own logs over the portion of the river so improved by that company, but on what ground they question that right does not appear. We will not consider the legality of the claims of the dam and boom company. For the purposes of this case, it was either a de jure or a de facto corporation, exercising the rights it asserted, the public has so far submitted, and we will assume that it is legally exercising those rights. A number of boom companies in this state are, under their several charters, legally exercising such powers, and no one can drive his own logs through the portion of the river of which one of those companies has possession for the purpose of driving logs, but owners must surrender their logs to the company, to be driven by it through such portion.

Does section 2466 apply in such a case, when it is necessary to drive the logs down through such a portion of the river before reaching a place where they can be conveniently separated? We answer in the affirmative. The legislature never intended to deny compensation to a person who has driven intermingled logs in such a case, and allow such compensation in other cases. If such person has driven the logs as far as the law permitted him, and then caused them to be driven by the boom company the rest of the way to a place where they can be conveniently separated, he has sufficiently complied with section 2466. This the plaintiff did. It is immaterial that the appellants paid the toll on their own logs, otherwise plaintiffs might have paid it, and have collected the amount in this action or in an action for that purpose. This disposes of the first two assignments of error.

2. Section 2466 further provides that the person driving such intermingled logs shall be entitled to compensation for driving the logs not his own, and that he

"May have and maintain a civil action for the amount of such claim * * * against the owner of such logs or timber, or any person in whose name such mark shall be recorded."

The mark of the logs here in question was recorded in the name of "Musser, Sauntry & Co.," a partnership. It is claimed by ap-

pellants that these logs were in fact owned by a corporation which was the successor of the partnership. The third assignment of error is as follows:

"The court erred in instructing the jury as follows: 'If the jury find that William Sauntry, in the fall of 1895, knew of the mark M Two Diamonds being recorded in the name of the partnership Musser, Sauntry & Co., and consented that such mark should be put on the logs in question in this action, then Sauntry would be liable as defendant, though his co-partner might not be, if the plaintiffs establish their cause of action in other respects,' because the log mark was not recorded in the name of William Sauntry, but in the name of the defunct co-partnership of which Sauntry had once been a member, and Sauntry was no more bound by the recording of the log mark in that name than he would have been if he had consented to its being recorded in the name of any other individual."

In our opinion, the court did not err in giving the charge in question. The name of the partnership in substance and effect included the name of the defendant Sauntry. Therefore he is liable. See O'Brien v. Glasow, 72 Minn. 135, 75 N. W. 7.

3. The fourth assignment of error is as follows:

"The court erred in instructing the jury, in substance, that the plaintiffs had no right to, and were not required to, drive any logs at any point in the river unless they were logs that had been previously taken possession of by the plaintiffs as a part of the mixed mass of logs in the stream, and that the plaintiffs were not required to take off wings of M Two Diamond logs, or intermixed logs that were not obstructing the driving of the stream, and that they might leave such logs where they consisted of logs that had not previously been taken into the plaintiffs' drive as a portion of the intermixed mass, because: (a) Such charge assumes that the jury had before them some evidence to determine whether or not a given body of logs which was left and not driven out had not been taken possession of by the plaintiffs as an intermixed body of logs, when in fact the evidence shows that it would have been impossible for witnesses present at the time the driving took place to determine that fact. (b). Because such charge assumes the law to be that, although the plaintiffs might take charge of a given body of intermixed logs, and start them down the stream, yet if any of such logs should become separated from the plaintiffs' logs, so that thereafter the plaintiffs' logs might be driven without driving those of the defendants, then, in that case, the defendants' logs might be left."

We will concede, for the purposes of the case, that this assignment of error correctly states the substance and effect of the court's charge on the point therein stated. It will be observed that two reasons are stated why this part of the charge is erroneous. In our opinion, the first reason, marked "(a)," is untenable.

There is evidence in the case from which it might be held that the person making the drive could not tell whether the intermingled logs claimed to have been left had ever been taken possession of by plaintiffs or not, but there is other evidence to the contrary. A part of this is evidence to the effect that plaintiffs took practically a clean rear out of Kettle river; that is, that they made practically a clean drive from the point where their logs became intermingled with the logs here in question. There is evidence tending to prove that plaintiffs drove their own logs past a large number of logs of the same mark (M Two Diamonds) as the logs here in question before the condition came about which warranted plaintiffs in attempting to drive their own logs and the logs here in question from that point forward, leaving behind all the logs of this mark which they had passed as aforesaid, and with which their own logs had not become intermingled. Under these circumstances it was not necessary for plaintiffs to make as clean a drive as they should have made of the logs here in question, if no more of the same logs were to follow over the same course during the same season. But appellants intended to drive the balance of the logs of this mark down this river the same season, and had at the time in question taken their driving crew further up the Kettle river for that purpose, as plaintiffs then knew. Again, the evidence tends to prove that the enormous quantity of logs then in the Kettle river made it necessary and proper that only a part of the logs should be driven down at a time.

The second reason, marked "(b)," why such part of the charge is erroneous, is wholly untenable. There is no evidence tending to prove that in any considerable or material portion of the intermingled logs the logs of plaintiffs became separated from the logs of defendants after plaintiffs undertook to drive such portion of the intermingled logs. It is not at all likely that such intermingled logs would thus separate of their own accord.

4. The fifth assignment of error is that the court erred in denying the motion for a new trial,

"Because all of the evidence shows that the plaintiffs did not, especially in the year 1896, drive the logs marked M Two Diamonds in good faith and in the same manner as they drove their own as far as they drove their own, and the verdict is therefore clearly against the great weight of the evidence."

In our opinion, the evidence warranted the jury in finding that plaintiffs did drive the logs in good faith, and in the same manner as they should have driven their own under the circumstances. We cannot take the time or space to review the 580 pages of evidence in the paper book for the purpose of showing on what we base that conclusion, but, after examining the same, that is our conclusion. This disposes of the case.

Order affirmed.